UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 6:17-CR-051-CHB |
| | ) | |
| v. | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER DENYING MOTION FOR** |
| RONALD BRANDON HUBBARD, | ) | **COMPASSIONATE RELEASE** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Defendant Ronald Brandon Hubbard's *pro se* Motion for Compassionate Release. [R. 400]. The United States filed no response. The matter is ripe for review. For the reasons stated herein, Defendant's Motion is denied.[1]

### I.  Background

On February 19, 2019, Defendant pleaded guilty to kidnapping and using a firearm in connection with a crime of violence. [R. 257; R. 259]. His Guideline Range was 151-188 months for kidnapping, and an additional 84 months **consecutive** on the firearm charge. [Presentence Report (PSR), p. 28]. This Court sentenced Mr. Hubbard, pursuant to a binding plea agreement, to 180 months of imprisonment, followed by 5 years of supervised release, a substantial variance **below** his Guideline range. [R. 301]. He is currently serving his sentence at the FCI Beckley. *See Inmate Locator*, Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited March 31, 2023). His projected release date is July 12, 2030. *Id.* On November 12, 2021, Defendant filed a motion

---

[1] On March 31, 2023, the Court entered, and then rescinded, a Memorandum Opinion and Order denying Defendant's Motion for Compassionate Release. [R. 404; R. 405]. The Court took such action to review new Sixth Circuit case law. [See R. 405. Upon review, the Court has determined that the new case law does not apply to the facts of this case. *See United States v. Domenech*, --- F. 4th ---, Nos. 21-1434/1466, 2023 WL 2727558 (6th Cir. Mar. 31, 2023).

requesting appointment of counsel for the purpose of filing a compassionate release motion, [R. 379], and on January 24, 2022, he filed his first *pro se* Motion for Compassionate Release, [R. 381]. After full briefing, the Court denied the motion on April 5, 2022, in an extensive Order. [R. 397]. Less than a year later, on February 6, 2023, Defendant filed a successive Motion for Compassionate Release. [R. 400]. Such motions for a sentence reduction are pursuant to 18 U.S.C. § 3582(c)(1)(A), known as "compassionate release." As discussed below, the Court will deny Mr. Hubbard's Motion.

## II.     Legal Standard

The compassionate release statute allows the Court to reduce the term of imprisonment and impose a term of probation or supervised release under certain narrow circumstances. Section 3582(c) provides that:

> The court **may not** modify a term of imprisonment once it has been imposed **except that**—
>> (1) In any case—
>>> (A) **the court**, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, **may reduce the term of imprisonment** (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), **after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that**—
>>>> (i) *extraordinary and compelling reasons warrant such a reduction . . .*
>>>>
>>>> *and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.*

18 U.S.C. § 3582(c)(1)(A) (emphasis added). Prior to the First Step Act of 2018 (FSA), Pub. L. No. 115–391, 132 Stat. 5194, only the director of the Bureau of Prisons (BOP) could move for a

sentence reduction under § 3582(c). 18 U.S.C. § 3582(c)(1)(A) (2017); *United States v. Jones,* 980 F.3d 1098, 1104 (6th Cir. 2020). However, under the FSA, courts may now consider a defendant's motion "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A). Exhaustion by one of the two means listed is a "mandatory condition" to the Court granting compassionate release. *United States v. Alam*, 960 F.3d 831, 833-35 (6th Cir. 2020). If the government "properly invoke[s]" the condition, the Court must enforce it. *Id.* at 834 ("Nothing in § 3582(c)(1)(A) suggests the possibility of judge-made exceptions.").

Upon satisfying the exhaustion requirement (or upon waiver by the government of this requirement), the statute requires the Court to undertake a three-step test in reviewing compassionate-release motions. *Jones*, 980 F.3d at 1107-08. At step one, the Court must "find" whether "extraordinary and compelling reasons" warrant a sentence reduction. *Id.*; 18 U.S.C. § 3582(c)(1)(A)(i). At step two, the Court must "find" whether a reduction in the sentence is "consistent with applicable policy statements issued by the Sentencing Commission." *Jones*, 980 F.3d at 1108; 18 U.S.C. § 3582(c)(1)(A)(i). At step three, the Court must "consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case." *Jones*, 980 F.3d at 1108 (quoting *Dillon v. United States*, 560 U.S. 817, 827 (2010)). In reference to step two, the Sentencing Commission in 2006 issued its policy statement in § 1B1.13 of the United States Sentencing Guidelines and the application notes to that section. *See* 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13 (2006). However, because this policy statement has not been updated since passage of the First Step Act in December 2018, the Sixth Circuit recently held that § 1B1.13 is

inapplicable to compassionate-release motions filed by the prisoner (as opposed to motions filed by the Director of the Bureau of Prisons). *Jones*, 980 F.3d at 1109-11; *see also United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021). Consequently, in cases like this one, where the defendant files a motion for compassionate release, "federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *Jones*, 980 F.3d at 1111. Further, "district courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others." *Elias*, 984 F.3d at 519. Of course, when granting a compassionate-release motion, the district court must address all three steps in its analysis. *Id.* The defendant bears the burden of establishing a sentence reduction is warranted. *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013).

With these standards in mind, the Court will now turn to the substance of Defendant's Motion.

### III. Discussion

#### A. Extraordinary and Compelling Reasons

As an initial matter, the Court will address whether Defendant has satisfied the administrative exhaustion requirement. *Alam*, 960 F.3d at 833-35. Although Defendant cites the exhaustion standard in his Motion, [R. 400, pp. 2-4], he fails to provide any details demonstrating he actually exhausted his administrative remedies. In any event, the government failed to file a response, and, consequently, failed to invoke the requirement. Accordingly, the Court will assume the Motion is properly before the Court and that Defendant has satisfied his exhaustion requirement. *Alam*, 960 F.3d at 833-35.

The Court next considers whether the Defendant meets the substantive requirements for

compassionate release as outlined by the Sixth Circuit in *Jones*. At step one, the Court must find that "extraordinary and compelling reasons" warrant a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i); *Jones*, 980 F.3d at 1107-08. The statute does not define "extraordinary and compelling" and, as mentioned above, the *Jones* Court recently held that the Sentencing Commission's policy statement in U.S.S.G. § 1B1.13 is inapplicable. *Jones*, 980 F.3d at 1111. Consequently, until the Sentencing Commission updates § 1B1.13 post-First Step Act, "district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion." *Id.* at 1109.

In his Motion, Defendant argues for compassionate release based on many of the same reasons outlined in his previous motion and also includes a handful of new arguments: changes in the law that would result in a lesser sentence today; harsh prison conditions that exacerbate his health conditions; medical conditions including obesity, hypertension, pre-diabetes, degenerative disc disease, and related spinal issues; his mother's dementia diagnosis; and significant rehabilitation. [R. 400]. The Court will first address Defendant's argument related to changes in the law. Even assuming changes in the law post-sentencing would produce a different Guideline range (and potentially lower sentence), the Sixth Circuit has held that changes in the law may not be considered in determining what constitutes extraordinary and compelling reasons under the statute. *See United States v. McCall*, 56 F.4th 1048, 1065-66 (6th Cir. 2022) (en banc) ("Nonretroactive legal developments, considered alone or together with other factors, cannot amount to an 'extraordinary and compelling reason' for a sentence reduction."). Further, even *if* such changes constituted extraordinary and compelling reasons for relief, Defendant's Motion, as outlined below, fails under the § 3553(a) factors. Further, Defendant's Motion largely re-hashes

arguments made in his original motion, and the Court will deny the current Motion for the same reasons outlined in its previous Order. *See* [R. 397]. As the Court held previously, even if the grounds argued by Defendant in his renewed Motion qualified as extraordinary and compelling reasons for relief, the § 3553(a) factors preclude release. That is, even if Defendant met the first step of the compassionate-release test—meaning, if the Court found "extraordinary and compelling" circumstances based on the various arguments made in his Motion—the Court finds that the § 3553(a) factors (Step 3) do not warrant a sentence reduction under the particular circumstances of this case.

### B. Balancing Under § 3553(a)

The Court has, once again, thoroughly reviewed the current and previous briefs and the factual record in this case in light of the § 3553(a) sentencing factors (and their purpose), which include in part: the nature and circumstances of the offense; the Defendant's history and characteristics; and the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford deterrence, protect the public from further crimes, and avoid unwarranted sentencing disparities. 18 U.S.C. § 3553(a)(1)-(7); *see also Jones*, 980 F.3d at 1112-16 (discussing the district court's obligation to weigh the § 3553(a) factors and provide specific factual reasons for its decision that furnish a thorough factual record for review). This Court need not "specifically articulat[e]" every single § 3553(a) factor as part of its analysis. *Jones*, 980 F.3d at 1114. Rather, the record "as a whole" (the original sentencing proceeding and the modification proceeding) must confirm the district court considered the "pertinent" factors. *Id*. This Court has thoroughly reviewed the sentencing proceedings in this case, along with the parties' arguments and submissions related to the previous motion and current Motion and is convinced that release is not warranted under the statutory factors for the same rationale outlined in the

Court's previous Order:

> First, the "nature and circumstances of the offense and the history and characteristics of the defendant" weigh against release. § 3553(a)(1). As to the "nature and circumstances," Defendant's offense was violent and shocking. Mr. Hubbard and his co-defendants bound the victim's hands and feet, placed duct tape over his mouth, and proceeded to assault him, using a firearm. [R. 259]. They believed the victim had stolen drug money from them, and they kidnapped and beat him, until he confessed. *Id.* The nature and circumstances of the offense call out for just punishment, deterrence and the need to protect the public.
>
> As to the "history and characteristics," Mr. Hubbard's Motion recounts a truly disadvantaged and difficult childhood marked by his parents' addiction, violence, instability, poverty and turmoil. [R. 381, pp. 6-8]. He recalls competing with his parents' drug addiction for affection and love, frequently being placed in the juvenile justice system and committed to psychiatric facilities, and being shot twice by his violent step-father while still a teenager. *Id.* He states he "was never shown by example how to live a meaningful crime-free life." *Id.* at 8. Mr. Hubbard expresses a desire to be released to a halfway house, to become self-sufficient and be reunited with his daughter. *Id.* at 23. He outlines the significant programming he has undertaken while incarcerated the last five years, which includes classes such anger management, drug education, traumatic stress and resilience, criminal thinking and basic cognitive skills. *Id.* at 24-25; [R. 381-1, pp. 60-61, 66-81]. He completed most classes with test scores of 100% and explains these classes decrease his risk of recidivism. *Id.* He argues that his childhood trauma played a significant part in the horrible person he became but that he is not the same person today. [R. 381, p. 24]. He has "completed a positive self transformation through intense programming efforts." *Id.* at 24; [R. 381-1, pp. 60-61, 66-81]. He explains that "[t]hese rehabilitative groups have provided me with the means to accept and overcome the difficulties in life and move forward." *Id.* at 25. Mr. Hubbard is also "pay[ing] it forward" by teaching a guitar/music class to other inmates during which he explains the healing power of music and his experiences in overcoming adversity. *Id.* He explains that he is "committed . . . to completing all rehabilitative and first step courses as they come available." *Id.* He advises that prior to incarceration he had many years of work experience and looks forward to re-entering the workforce and contributing his fair share. His daughter has identified potential jobs for him. *Id.* at 26. Upon his release, he advises he has the support of family, friends and his daughter. He is 5 years sober and upon release, plans to join a church, get a job and "re-establish [his] life by [his] own efforts to prove to everyone [he has] the ability to do so." *Id.* at 27. The Court agrees with Mr. Hubbard that his childhood was shocking in its failure to protect him and to provide the safety and security that he, like all children, deserved. The Court likewise believes that his transformative thinking and rehabilitative efforts while incarcerated are particularly compelling.

> The Court has also considered the numerous letters in support of Mr. Hubbard's Motion. One of his fellow inmates, who is a student in Mr. Hubbard's music class, advises that Mr. Hubbard has "changed the way I view life through incarcerated eyes." [R. 383]. Mr. Hubbard's daughter, who is working toward a vocational degree, compelling[ly] describes her father's remarkable transformation while incarcerated. She advises that she and Mr. Hubbard talk almost daily and that she is convinced her will do good things upon release. [R. 384]. Mr. Hubbard's cousin describes the tragic circumstances of his childhood and offers support for Mr. Hubbard upon his release. [R. 385]. Another friend describes the trauma, abuse and poverty that defined Mr. Hubbard's childhood and the remarkable rehabilitation he has worked to achieve while incarcerated. [R. 395]. Undoubtedly, Mr. Hubbard has earned the support and respect of his family and friends with his transformation while incarcerated.
>
> Nevertheless, as part of his history and characteristics, the Court must also examine Mr. Hubbard's criminal history which includes convictions for assault (numerous), marijuana cultivation, DUI, terroristic threatening, violation of an emergency protective order, and more. [Pre-Sentence Report (PSR), pp. 10-19]. His total criminal history score was 24, which placed him in a criminal history category of VI, the highest possible.
>
> Turning to the other § 3553(a) factors, release at this point would not "reflect the seriousness of the offense, []promote respect for the law, and []provide just punishment for the offense." § 3553(a)(2). Indeed, granting the relief requested would undercut the dual goals of promoting respect for the law and providing just punishment, especially given that Defendant has served only about [40]% of his 180-month sentence (his current release date being July 12, 2030). The Court thoroughly reviewed all the § 3553(a) factors at Defendant's original sentencing hearing and has done so again. The same factors that warranted the Court's acceptance of the binding plea agreement calling for a 180-month sentence (a significant variance below his Guideline range) also weigh against a sentence reduction. Further, the Court carefully considered the mitigating factors in Mr. Hubbard's background, including his tragic childhood, at the time of his sentencing. But this Court's job is to assess *all* the relevant statutory factors. Release at this point would fail to deter criminal conduct generally, to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment. That is, consideration of *all* the § 3553(a) sentencing factors precludes early release. Accordingly, because Mr. Hubbard cannot satisfy the statutory factors for early release, his Motion will be denied.

[R. 397, pp. 8-11].

Likewise, the Court would, once again, be remiss if it did not congratulate Defendant on his strong rehabilitative efforts, firm release plan, programming, maturity of

thinking, and commitment to change. [R. 400, pp. 26-31]. The Court will repeat its previous reflections on this good work, which remain true:

> The Court would be remiss if it failed to address Mr. Hubbard's significant and impressive efforts toward rehabilitation during incarceration. He has immersed himself in positive programming and changed his thinking in ways that are mature, positive, and productive. Notwithstanding his difficult childhood, Mr. Hubbard is taking responsibility for his adult actions and developing productive ways to deal with his residual trauma and circumstances. Not only is he working to better himself, he is also "paying it forward" by helping other inmates program, heal, and reject criminal thinking patterns. He has a sincere desire to help support his daughter upon his release and enjoys other family support. The Court is greatly encouraged with Mr. Hubbard's productivity and efforts to ensure he can be the person he needs to be during incarceration and upon release. The letters written in support of his Motion also demonstrate his real, tangible, positive transformation. Mr. Hubbard's Motion was articulate, thorough, and well-written, further evidence of his bright future upon release. Mr. Hubbard's wise rehabilitative work and productive thinking will bear fruit upon his release from custody. The Court commends Mr. Hubbard and his hard work and resilience.

[R. 397, p. 11].

Even so, the Court thoroughly reviewed all the § 3553(a) factors at Defendant's original sentencing hearing and has done so again (and again). The same factors that warranted a sentence of 180 months weigh against early release. For the foregoing reasons, and upon consideration of *all* the § 3553(a) sentencing factors, early release is not warranted.

Accordingly, and the Court being otherwise sufficiently advised, **IT IS HEREBY ORDERED** as follows:

1. Defendant Ronald Brandon Hubbard's Motion for Compassionate Release [**R. 400**] is **DENIED**.

This the 3rd day of April, 2023.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF KENTUCKY